A. M. Oliver v. Commissioner.
Oliver v. Commissioner
Docket No. 105890.
United States Tax Court
1942 Tax Ct. Memo LEXIS 115; 1 T.C.M. (CCH) 8; T.C.M. (RIA) 42567; October 27, 1942
*115 Mayer Sniderman, Esq., for the petitioner. Charles Oliphant, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, J.: This proceeding involves the redetermination of deficiencies and negligence penalties as follows: Deficiency
Penalty
1936
$1,012.87
$50.64
1937
1,614.38
80.72
1938
985.44
49.27
On account of the absence of books and other records, respondent computed petitioner's liability from bank deposits and checks drawn against the accounts, in connection with which he made certain adjustments for items identifiable as nontaxable and deductible amounts. On account of the fact that all of the checks issued in 1936 against the accounts were not available during the audit of the petitioner's return for that year, the respondent allowed as a deduction from gross income a percentage of gross income equal to the average of the ratios of deductions to gross income in 1937 and 1938. The issues are whether the deficiencies so determined by the respondent correctly reflect petitioner's income tax liability and whether respondent erred in imposing negligence penalties of 5 per cent of the deficiencies. Petitioner filed his returns for *116 the taxable years with the collector for the twenty-third district of Pennsylvania. Findings of Fact Since 1916 petitioner has been engaged in the practice of law in Pittsburgh, Pennsylvania, specializing in damage suits involving negligence, at times in association with other attorneys. Petitioner's records of transactions involving income tax liability consisted of "monthly working sheets" on which he entered items of income and expenses such as telephone and other office expenses, expenses incurred in conducting investigations preliminary to the trial of the cases, and trial expenses. These records, including checks drawn by petitioner against his bank accounts, were available to petitioner when he prepared his returns for the taxable years. The working sheets and some of the checks issued in 1936 disappeared from petitioner's office, where they were on file, in about the summer of 1939, and petitioner has not been able to locate them. As soon as petitioner discovered that his records were missing, which was before he was aware that an examination would be made of his records in connection with an audit of his income tax returns for the taxable years, he endeavored to locate *117 them, but did not succeed. He believed that they had been removed from his office with records belonging to a client. Investigations were conducted by representatives of petitioner prior to the trial of damage suits filed by him on behalf of clients, in connection with which police officers, doctors, hospital attendants, public records, witnesses to the accident, and others probably having some knowledge of the cases were interviewed. This work was performed at various times by from 6 to 12 individuals, principally, however, by L. M. Bair, who devoted about 95 per cent of his time to the work. With the exception of a few instances occurring at undisclosed times, petitioner gave L. M. Bair cash to pay investigating expenses. In each of the taxable years from $2,700 to $3,200 was furnished L. M. Bair by petitioner to pay investigation costs. The entrance door to the building on the fourth floor of which petitioner maintains his office was closed at 6 p.m. The building had no elevator. Petitioner possessed a key to the building and could use it to gain access to his office at night. In some classes of negligence it was necessary for petitioner to consult doctors and others and have *118 them available in court to testify. Petitioner arranged to meet and entertain employees of hospitals and public offices, members of the police department, and others, at the Pittsburgh Athletic Association and the William Penn Hotel, located in Pittsburgh, Pennsylvania. Petitioner also entertained people at the Longue Vue Club located a short distance from Pittsburgh. The bank deposits to petitioner in 1937 from his business, less certain nontaxable amounts, were $66,505.73, from which respondent deducted $29,777.28 for payments to clients and allowed amounts aggregating $13,378.17 as expenses and other deductions in determining net income of $23,350.28 from his business. The deductions of $13,378.17 includes $733.72 for miscellaneous expenses, and $300 for "Cash expense." In that year petitioner issued against the bank deposits checks aggregating $563.20 and $296.01 in favor of the Pittsburgh Athletic Association and William Penn Hotel, respectively, and $4,730 payable to "cash," out of which he used $1,200 to pay personal expenses. In 1937 petitioner expended $453.12 for garage rent and gasoline and oil for, and repairs to, an automobile used in connection with his business. *119 Several years prior to the taxable years petitioner purchased at a cost of $2,000 a second mortgage on a farm on which a first mortgage of $5,000 was outstanding. In 1937 the first mortgage was foreclosed and at the sheriff's sale held under the proceedings the property was sold for $131.73 in excess of the amount of the first mortgage, plus costs, which amount was paid to petitioner in 1937. In his return for 1937 petitioner reported gross income of $11,007.47. The alleged loss on the mortgage and an amount for depreciation were deducted in arriving at that amount. Nothing in the return disclosed that the deductions had been made. Petitioner was bequeathed 200 shares of stock of the Pennsylvania Railroad under the will of his uncle who died in 1929. The will was probated in Allegheny County, Pennsylvania. In July 1930 or 1931, after the price of the stock had decreased from $85.50 to $55 per share, the petitioner requested the trustee under the will to sell the stock, but it refused to comply with the request. Thereafter a new administrator was appointed, and he sold the property in the estate for a lump sum. In 1937 petitioner received about $5,600 from his uncle's estate. The *120 return filed by petitioner for 1937 does not disclose a deduction for a loss sustained in the distribution. The total bank deposits of business income of petitioner for 1938, less non-income items and payments to clients, were $27,759.02. From this amount of gross income respondent allowed amounts aggregating $9,439.91 for expenses and other deductions, including $616.04 for miscellaneous expenses, and $300 for "Cash expense." Checks aggregating the sum of $5,160, payable to cash, were issued against the bank accounts. Of the funds so withdrawn, $1,200 was used by petitioner to pay personal expenses. In 1938 petitioner issued checks aggregating in amount $606.35, $2901.86 and $155.82 in favor of the Pittsburgh Athletic Association, the Longue Vue Club, and the William Penn Hotel, respectively. In 1938 garage rent, gasoline and oil for, and repairs to, an automobile used by petitioner in his business aggregated in amount $336.16. Indeterminable amounts of the payments made by the petitioner in 1937 and 1938 to the Pittsburgh Athletic Association and the Longue Vue Club were for dues. In his determination of the deficiency for 1938 respondent found that the gross income of petitioner *121 from his business was $55,244.36 and allowed deductions therefrom of $35,403.13. Gross income was computed by deducting from total bank deposits of $59,031.09, nontaxable items aggregating $3,786.73. At the time respondent determined the deficiency petitioner had no bookkeeping or other records showing items deductible from gross income. In the absence of such records, respondent determined the average ratio of deductions to gross income in 1937 and 1938 and applied such percentage, 64.0847%, to gross income in 1936 in computing the amount of $35,403.13 as business deductions in that year and net income of $19,841.23 from petitioner's business. The returns filed by petitioner for the taxable years reported amounts for income from business. The supporting schedules reported amounts for total receipts from business and amounts for "Rent, repairs and other expenses," which petitioner deducted from total receipts to determine the net profit of his profession. The only deductions taken (contributions, interest, and taxes) were explained in the space provided in the return. Opinion This case presents a rather badly confused state of facts relative to the filing of income tax returns. *122 The petitioner, an attorney specializing in the trial of negligence and accident cases, had, at the time of the Commissioner's examination, records so sparse that it was necessary for the Commissioner to start his computations with the petitioner's bank deposits. It is obvious and indeed in part admitted that the petitioner did not report the gross receipts from his business, in effect, reporting only his net income from such practice of law, and deducting therefrom only items for interest, taxes paid and contributions, the lines provided on the income tax forms for deduction of losses, bad debts, and "Other deductions authorized by law," being as to each of the taxable years filled in with the information "None." The petitioner had some records for the years 1937 and 1938, but for the year 1936 had practically none, except the bank deposits with the amounts kept for that year having disappeared. The petitioner does not appear to quarrel with the amounts of the bank deposits or take any particular issue with the fact that the Commissioner started his computations with such bank deposits. The petitioner's contentions are, in effect, that he should be allowed certain expenses of the *123 conduct of his business, particularly those involved in "investigating" accident and negligence cases, that he should be allowed depreciation on an automobile used in the conduct of his profession, that certain expenses paid clubs and a hotel were expended for good will and as a substitute for advertising, and therefore, though not identified as particular expense against any particular case conducted by the attorney, should be allowed as ordinary and necessary expenses; also, that he suffered in 1937 a loss through the foreclosure of a first mortgage which was prior to a mortgage held by him upon certain real estate and suffered a loss in 1937, when he received from the trustee of an estate the proceeds of the sale of certain bonds which he had bequeathed and which he had unsuccessfully attempted to cause the trustee to sell at an earlier date, when they were of a much higher value. Petitioner further contends that it was error for the Commissioner, in the absence of records for 1936, to apportion expenses upon the same proportions as ascertained by him for the years 1937 and 1938. We will first consider the matter of the loss contended for because of the sale of the "inherited" *124 stock and denied by the respondent. The question arose first at trial, since no assignment of error or statement of fact in the petition refers to such stock, or deduction of loss thereon, and no such loss is shown as a deduction upon the income tax return for 1937. The record is altogether insufficient to indicate error on the part of the respondent. Neither the will nor the terms of the trust under which the bonds appear to have been held is shown in the record. We are uninformed as to whether the petitioner had a right to have the bonds sold at an earlier date when they had a higher value. In short, the record is almost entirely barren as to what petitioner's rights were. It is not clear whether, under the will, he was a residuary legatee or otherwise. If it was a residuary devise, no loss could be predicated upon a demand for sale prior to distribution. Estate of Edith M. Findlay, 46 B.T.A. 1214. We hold that no error was shown in this regard. Next, with respect to the loss contended for because of the foreclosure of a first mortgage senior to one held upon real estate by the petitioner: The loss contended for is set forth among the facts alleged *125 in the petition, but does not appear as an assignment of error, and no such deduction appears in the income tax return filed for 1937. It is nevertheless considered. The second mortgage was purchased in some previous year by the petitioner for $2,000. In 1937 the first mortgage was foreclosed and as the holder of the second mortgage, the petitioner received the sum of $131.73 of the purchase price, remaining after satisfaction of the first mortgage. Petitioner in his original brief stated facts to indicate a loss of $2,168.27, representing the difference between the $131.73 received and the sum of his $2,000 investment, plus $300 interest thereon, but did not argue the point. Since the record does not indicate that the $300 interest had ever been reported as income, that amount could, in any event, not be included in any loss allowed, and in his reply brief the petitioner seems to eliminate consideration of the $300. However, the record on this matter is also insufficient to indicate error in the treatment accorded the matter by the respondent. No completed loss is shown for the reason that the record is silent as to whether the indebtedness secured by the mortgage was otherwise secured, *126 whether such security had been exhausted, or whether the mortgagors had other assets from which satisfaction might have been had. Collin County Nat. Bank v. Commissioner, 48 Fed. (2d) 207; Benton Harbor State Bank, 20 B.T.A. 1106; Hennepin Lumber Co., 19 B.T.A. 280; Frank D. Stranahan, 14 B.T.A. 1405. We hold that no error had been shown on this matter. With respect to depreciation claimed by the petitioner on cars used in his business during 1937 and 1938: The record indicates that a car was used in his business, but it does not disclose the cost or useful life thereof. The car used in 1937 was acquired as a gift. In such state of the record, no finding can be made of error in denying deduction for depreciation. We next consider the petitioner's contention that expenses for entertainment, paid by him at two clubs and a hotel, were in connection with the practice of his profession and deductible. Several difficulties present themselves in connection with this claim. The petitioner testified that such expenses were in part paid for good will and in effect *127 for advertising, which he could not otherwise do. An indefinite part of the expenses were spent by the petitioner for club dues and upon himself. An equally indefinite part was spent in entertaining police officers and doctors and other witnesses and persons in connection with the trial of negligence and accident cases. We consider it clear that such a record renders it impossible to say that the denial of the deductions claimed was error. Any portion of the amounts spent in entertaining public officers, such as police officers, must be denied deduction as contrary to public policy. T. G. Nicholson, 38 B.T.A. 190 Expenditures in acquisition of good will are in general to be capitalized, and petitioner's own testimony so classifies in general the expenses now being considered. Reference to advertising indicates that any such advertising was a part of building good will. Such expense for good will requires capitalization. Geo. W. Caswell Co., 14 B.T.A. 15; Reginald Denny, B.T.A. 738. Moreover, in our opinion, under the evidence adduced on the point, the expenses are not shown to have such connection with the conduct *128 of the petitioner's business as an attorney, as to be properly deductible as ordinary and necessary expenses of business. It should not be, and in our opinion it is not, ordinary and necessary to entertain public officers, physicians and prospective witnesses in connection with the trial of actions at law. Although under some circumstances club expenses have been allowed as deductions, under all the facts and circumstances which we have found here, and the impossibility of allocating the expenses between the petitioner himself, the parts spent upon entertaining public officers and the remaining portion, we fail to find that the expenses are ordinary and necessary expenses of business. Petitioner also contends that the respondent erred in disallowing considerable amounts of money expended by him for "business expenses and investigations." In particular he contends that of $4,730 represented by checks drawn to cash in 1937, only $1,200 was for personal expense, and the remainder was for business expense and investigations. Such general evidence is, of course, insufficient and therefrom we are unable to determine whether the payments were ordinary and necessary to the petitioner's business. *129 Moreover, such expenses appear to have been for investigations conducted in the main by a certain investigator, to whom, the record shows and we have found, from $2,700 to $3,200 was paid each year. The respondent, however, in the year 1937 allowed $3,735.14 for investigating expenses. Therefore we can not say that the petitioner has failed to receive credit for the deduction contended for by him. The same is true as to the year 1938, where the petitioner contends that out of $5,160 checks issued in favor of cash, $3,960 was cost of interviewing witnesses, engineers' fees and other expenses in connection with investigations. The record shows, however, that the petitioner for that year has been allowed $3,150.88 for "investigating," $300 for "cash expense," and $616.04 for "miscellaneous expenses." Moreover, the petitioner testified that $1,200 of these checks were for personal expenses. We conclude from all of the facts that such expenses are not shown not to have been allowed. As to the petitioner's argument that the respondent erred in allocating expenses in 1936 in the same proportion to income as found in 1938, because of the lack of records for 1936: Although the record does *130 indicate that the amount of business income and expense is not constant throughout the years, it does not indicate that they were not, approximately at least, in the same proportions in 1936 as for the years 1937 and 1938. The burden is upon the petitioner to show error on the part of the respondent of that the determination was arbitrary and without basis. We think such showing has not been made. The method adopted by the respondent was, in effect, forced upon him by the fact that the petitioner's return as in the other taxable years did not show in fact the gross receipts from business, nor explain in any reasonable detail the income and expense of incurring such income; in addition to which petitioner's record for the year 1936 disappeared. The petitioner admits that he deducted from his receipts amounts not claimed as deductions upon his returns, such as for the loss on the second mortgage and the stock sold by a testamentary trustee in 1937. Under such circumstances, we think it can not be said that the Commissioner's method was arbitrary, and the facts do not establish that it is incorrect. The petitioner can not be accorded such "wide latitude" as upon brief he contends for *131 in manner of reporting his income. He should not be allowed, in effect, to throw the burden upon the Commissioner of showing what his income actually is, by the failure to keep and preserve records to show gross receipts entering into the calculation of business income and the facts as to deductions claimed. In this respect we find no error on the part of the respondent. In 1937 petitioner expended $453.12 for garage rent, gasoline and oil for, and repairs to, an automobile used in connection with his business; the same items in 1938 were $336.16. The evidence shows the use of the automobile in business and indicates that such items are reasonably to be considered as deductible business expense. The items are allowed. The respondent added 5 per cent to the tax under the authority of section 293 (a) of the Revenue Acts of 1936 and 1938, because of "negligence or intentional disregard of rules and regulations." In the state of the record before us, we do not find that this was error. Petitioner admits that he did not keep records, other than we above indicated (including those for 1936 which disappeared), which appear to us to be reasonable attempt to record income. He agrees that *132 various items of income were not reported, and large items of deduction were not specified or claimed in returns, e.g., loss on stock and second mortgage. It was necessary, in order even to approximate the petitioner's true situation, for the Commissioner to resort to the petitioner's bank deposits. In the petition it is alleged that the total bank deposits included repayment of moneys and loans made in prior years to friends and repaid in the taxable years. But no such allegation was supported by evidence at the hearing. The petitioner was reluctant, even at the hearing and as a witness, to disclose such details as the names of persons entertained and upon whom alleged business expense was expended. Upon brief he "submits that his reluctance during the cross-examination to identify these persons was natural and reasonable, inasmuch as the relationship existing was of a confidential nature." Such reluctance to disclose all of the facts is not appealing. Considering this whole record, we can not say that the 5 per cent additional because of negligence was improperly added by the Commissioner. Decision will be entered under Rule 50.